IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


KELVIN BOWMAN,
       Plaintiff,

vs.                                 Case No.: 3:03cv568/RV/EMT

JAMES CROSBY, et al.,
       Defendants.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Plaintiff's Third Amended Civil Rights Complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 43) and Plaintiff's Motion for a Preliminary and Permanent Injunction (Doc. 45).  Leave to proceed in forma pauperis has been granted (Doc. 9).

      Named as Defendants in this action are James V. Crosby, Secretary of the Florida Department of Corrections ("DOC"); Thomas J. Hamilton and Orlester Dickens, representatives of the Secretary of the DOC; Charles W. Shockley, Grievance Administrator for the DOC; R. Castle; and the following employees of the Santa Rosa Correctional Institution ("SRCI"): retired Warden J.S. Petrovsky, Assistant Warden A. Haskin, Grievance Coordinator M. Booker, Warden L.E. Griffis, Chaplain Jones and Chaplain Gray (Doc. 43 at 1-4).[1]  Plaintiff alleges Defendants violated his right to freely exercise his religion under the First Amendment, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") and the Florida Constitution, and discriminated against him on the basis of his religion.  He seeks declaratory relief, injunctive relief and monetary

---

[1]Plaintiff's third amended complaint (Doc. 43) is a 45 page document, exclusive of the attachments.  Unless otherwise noted, all references to the page numbers of this complaint are to the page number assigned by the clerk of court.

damages.[2]

After careful consideration, it is the opinion and recommendation of the undersigned that Plaintiff's complaint should be dismissed for failure to state a claim upon which relief may be granted.

## I.    BACKGROUND

Plaintiff alleges the following facts in support of his claims.  He was housed at Washington Correctional Institution ("WCI") from approximately January to April of 2003.  WCI officials denied Plaintiff's requests to "have his religious files reflect that he is a black Hebrew by nationality, a Yisraelite by race and a Yehudaite (Jew) is his tribe" (Doc. 43 at 19).  However, because the WCI chaplain made a sincere effort to accommodate Plaintiff's religious beliefs, Plaintiff states he is not suing him (*id.* at 20).

Plaintiff was transferred from WCI to SRCI in July or August of 2003.  Upon arrival at SRCI he filed a request with Defendant Jones, advising him that he was a "Hebrew, Yisraelite (Jew)," and seeking placement on the "high holy day and festival fast day list" according to the Jewish calendar (*id.* at 20).  Plaintiff also requested that his prison record reflect his religion (*id.*).  Defendant Jones advised Plaintiff that it was "impossible to determine exactly what [his] religious preference is" and that he knew of no such verified faith group (*id.* at 21).  Plaintiff was given the option of declaring his religion as either Hebrew-Israelite or Jewish,[3] and if he did so, his record would reflect the change, although Plaintiff was advised that the prison had no Hebrew-Israelite calendar (*id.*).  Plaintiff failed to declare a religion because the available options did not accurately reflect his religion, thus the computer continued to list Plaintiff as "unknown regarding religious preference" (*id.* at 21-22).  Plaintiff avers that there are differences between the Hebrew-Yisraelite and Hebrew-Israelite religions (*id.* at 25).  Specifically, one follows the solar calendar and the other follows a lunar calendar (*id.* at 26)

Plaintiff filed numerous grievances seeking recognition of his religion and those things

---

[2]Plaintiff states "all Defendants are being sued in their individual capacity for monetary damages . . . [and] in their official capacity for declaratory and injunction [sic] relief" (Doc. 43 at 1).

[3]Plaintiff later alleges that there are actually "four religious group[s] of the genre of Jewish" (Doc. 43 at 28). Thus, it appears that the two listed by the Chaplain were the closest to Plaintiff's religion, but that others were available.

necessary to accommodate his religious beliefs, including a Kosher diet, a conjugal relationship with his wife,[4] and the ability to celebrate his holy days, which include Passover, Feast of Unleavened Bread, Feast of Weeks, fast day, Feast of Shavvot, Yom Kippur, Feast of Sukkot, Holy Day of Gad (Seventh Month, New Moon), Feast of Tabernacle and the Sabbath ("every Friday sunset until Saturday sunset no work, lighting fires or traveling") (*id.* at 21-23). Plaintiff's grievances were denied, as he failed to select an available religious option, although the options of Hebrew-Israelite or Jewish were available to him (*id.* at 23). Plaintiff's informal grievances were denied by Defendant Jones (*id.* at 23); his formal grievances were denied by Defendants Booker, Haskin, Petrovsky, Griffis and Hamilton (*id.* at 24, 25); and, upon appealing to Defendant Crosby, Plaintiff claims his appeal was not answered within thirty days as required, although it appears it was ultimately denied by Defendant Dickens (*id.* at 24; *see also* Doc. 43, Ex. 1 at 8). Plaintiff alleges that Defendant Castle responded to grievance number 0303-110-176 (*id.* at 21), although the grievances attached to Plaintiff's complaint do not contain Castle's name or signature, and he is mentioned nowhere else in the complaint.

Plaintiff claims that his inability to receive Kosher meals resulted in an "inadequate nutritional food diet," weight loss (fifteen pounds), muscle atrophy, hunger headaches, fatigue, confusion, an inability to fight off illnesses and recover from a brain tumor, as well as heart, kidney and liver problems, although Plaintiff acknowledges that a Kosher diet was available to white inmates classified as "Jewish" and that such inmates were allowed to observe Jewish holidays (*id.* at 27). Plaintiff further acknowledges that no inmate, regardless of his or her faith, is allowed conjugal visits (*id.*).

## II.   ANALYSIS

Because Plaintiff is proceeding in forma pauperis, this Court has a statutory duty to dismiss this action at any time if the court determines it is frivolous or malicious, fails to state a claim upon which relief may be granted or seeks monetary relief against a Defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). The court must read Plaintiff's pro se allegations in a liberal

---

[4]Plaintiff later refers to his wife as his "wife/fiancee" (*see* Doc. 43 at 28), just as he did in his second amended complaint (*see* Doc. 29 at 7(i)). It was suggested to Plaintiff that he clarify, in his third amended complaint, whether he is married or engaged (*see* Doc. 38 at 10), but Plaintiff failed to do so.

fashion.  Haines v. Cornier, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).  In determining whether the complaint states a claim upon which relief may be granted, the court accepts all facts set forth in the complaint as true.  *See* Davis v. Monroe County Bd. of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997).  The complaint fails to state a claim only when it appears beyond all doubt that Plaintiff can prove no set of facts in support of his claims that would entitle him to relief.  *See* Brown v. Budget Rent-A-Car Systems, Inc., 119 F.3d 922, 923 (11th Cir. 1997).  Because the language of section 1915 tracks the language of Fed.R.Civ.P. 12(b)(6), Rule 12(b)(6) standards apply in determining whether a Plaintiff's case is subject to dismissal under section 1915(e)(2)(B)(ii). *See* Mitchell v. Farcass, 112 F.3d 1483, 1487 (11th Cir. 1997).

### A.    Free Exercise of Religion Claims

"In the First Amendment context . . . a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 1974); Lawson v. Singletary, 85 F.3d 502, 509 (11th Cir. 1996).  A prisoner's right to exercise his religion is not absolute; it is only required that he be accorded a reasonable opportunity to pursue his religion.  Cruz v. Beto, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972) (per curiam).  Thus, while inmates maintain a constitutional right to freely exercise their sincerely held religious beliefs, this right is subject to prison authorities' interests in maintaining safety and order. O'Lone v. Estate of Shabazz, 482 U.S. 342, 345, 107 S.Ct. 2400, 2402, 96 L.Ed.2d 282 (1987); Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); Cruz v. Beto, *supra*.  The Supreme Court held in Turner that when a prison regulation or policy impinges upon an inmate's constitutional rights, the policy is valid if it is reasonably related to legitimate penological interests. Turner, 482 U.S. at 89-91, 107 S.Ct. at 2261-63; Pope v. Hightower, 101 F.3d 1382, 1384 (11th Cir. 1996).  Prison administrators should be given great deference in adopting and executing policies and practices.  Absent substantial evidence in the record indicating that officials exaggerated their response to considerations of order, discipline, and security, courts ordinarily should defer to their judgment.  *See* Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979); *see also* McCorkle v. Johnson, 881 F.2d 993 (11th Cir. 1989).

The recently enacted Religious Land Use and Institutionalized Persons Act of 2000

("RLUIPA") provides a standard of review less deferential to prison officials:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person . . . is in furtherance of a compelling governmental interest[ ] and . . . is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

This legislation was passed, at least in part, in response to the Supreme Court's decision in City of Boerne v. Flores, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), where the Court held the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, *et seq.*, was unconstitutional as applied to the states because it exceeded Congress's authority under the Fourteenth Amendment of the Constitution. The Court's decision in Boerne marked the return to the standard employed in Employment Division, Dept. of Human Resources of Oregon v. Smith, 494 U.S. 872 (1990), and in the context of prison cases, O'Lone v. Shabazz, *supra*, which was the Turner "reasonableness" standard.

In the instant complaint, Plaintiff has failed to establish a federal constitutional claim. First, a mere failure to list Plaintiff's religious preference in his official prison record imposes no burden upon Plaintiff's exercise of his religion. Similarly, a failure to recognize his particular faith as a verified faith group imposes no burden upon Plaintiff in and of itself. Plaintiff alleges the practice of his religion is burdened by his inability to obtain Kosher meals, observe holy days, and otherwise participate in permissible religious observances. However, the burden is self-imposed, not imposed by Defendants. Plaintiff is burdened only because he refuses to select a recognized faith group that most closely resembles his faith. As Plaintiff admits, if he were to select one of the four recognized faith groups of the "genre of Jewish," he would experience his important worship traditions, including the observance of Jewish holy days and the consumption of Kosher meals.[5] Although Plaintiff alleges that the holy days recognized by the verified Jewish faith groups are not identical

---

[5]Although Plaintiff suggests in one part of his complaint that the Kosher meal program has not yet been implemented (*see* Doc. 43 at 24), he acknowledges in other parts of his complaint that "Jewish dietary accommodations" exist (*id.* at 26), that Defendants refuse to provide him with the available Kosher diet (*id.* at 27), and that other inmates receive Kosher meals and celebrate Jewish holidays (*id.*).

to those of his faith (one follows the lunar calendar and the other follows the solar calendar), he has failed to demonstrate that the differences would result in a substantial burden on the exercise of his religion.  In fact, Plaintiff specifically requested placement on the "high holy day and festival fast day list" according to the Jewish calendar (Doc. 43 at 20) and admits that the Jewish holidays are similar to those of his own faith, as both observe the "Feast of Pesach (Passover), Feast of Unleavened Bread, Feast of Sheafs, Feast of Weeks/Pentacost, Yom Kippur and the Feast of Sukkot (Tabernacle), etc." (*id.* at 27).  Thus, the holy days and fast days recognized by the DOC sufficiently accommodate Plaintiff's beliefs and are available to him.

To the extent Plaintiff claims that the forced selection of a faith similar but not identical to his own violates his constitutional rights, Plaintiff has failed to state a claim.  The Supreme Court has made it clear that the Free Exercise Clause affords prisoners "reasonable opportunities" to exercise their religious beliefs. Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (per curiam). The Court recognized, however, that limits may be placed on the religious rights that must be afforded to inmates:

> We do not suggest, of course, that every religious sect or group within a prison--however few in number--must have identical facilities or personnel.  A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to extent of the demand.

405 U.S. at 322, n. 2, 92 S.Ct. 1079.  An inmate is not free to do that which he might wish to do, nor may he do allowable things at a time and in a manner he might prefer.  Muhammad v. Lynaugh, 966 F.2d 901, 902 (5th Cir.1992).  In Hill v. Estelle, 537 F.2d 214, 215 (5th Cir. 1976),[6] the Fifth Circuit reiterated the long-standing principle that "lawful incarceration results in the necessary limitation of many privileges and rights of the ordinary citizen."  Thus, although Plaintiff would prefer that his record reflect he is a Hebrew-Yisraelite Jew rather than a Hebrew-Israelite Jew,[7] the prison need not

---

[6]In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

[7]Plaintiff has not alleged that selecting a religious preference other than Hebrew-Yisraelite requires that he disavow his sincerely held religious beliefs.

do so, as long as reasonable accommodations are available that accommodate his beliefs and religious traditions.

Finally, Plaintiff claims that conjugal visits are commanded by his religion and should be permitted by the DOC, although Plaintiff's complaint does not establish that is married, nor that he was married during the time frame relevant to this complaint.  Furthermore, visitation privileges are a matter subject to the discretion of prison officials.  *See* Montana v. Commissioners Court, 659 F.2d 19, 21-22 (5th Cir. 1981), *cert. denied*, 455 U.S. 1026 (1982).  It is well settled that failure to permit conjugal visits does not deny an inmate a federal constitutional right.  McCray v. Sullivan, 509 F.2d 1332, 1334 (5th Cir.), *cert. denied*, 423 U.S. 859, 96 S.Ct. 114, 46 L.Ed.2d 86 (1975); Tarlton v. Clark, 441 F.2d 384, 385 (5th Cir.), *cert. denied*, 403 U.S. 934, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971) (federal prisoner).  *See also* Hernandez v. Coughlin, 18 F.3d 133, 137 (2nd Cir. 1994) ("The [U.S.] Constitution . . . does not create any protected guarantee to conjugal visitation privileges while incarcerated," as "[r]ights of marital privacy . . . are necessarily and substantially abridged in the prison setting").  Accordingly, Plaintiff has failed to state a constitutional claim concerning the denial of conjugal visits.

**B.       Equal Protection Claim**

Plaintiff has alleged a denial of equal protection, claiming that  Defendants provide white Jewish inmates Kosher meals and allow them to observe religious holidays, yet deny those same rights to him.  Plaintiff, however, has failed to state a constitutional violation.  It is well established that equal protection "does not require that all persons be treated identically."  Hendking v. Smith, 781 F.2d 850, 851 (11th Cir. 1986) (citing Stanton v. Stanton, 421 U.S. 7, 14, 95 S.Ct. 1373, 1377, 43 L.Ed.2d 688 (1975)).  The Equal Protection Clause merely requires that "similarly situated persons be treated equally."  Duncan v. Moore, 754 So.2d 708, 712 (Fla. 2000) (citing Clebrune v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike.")).  "[I]f the distinctions between similarly situated individuals are to withstand an equal protection analysis, such distinctions must be reasonable, not arbitrary, and must rest on grounds having a fair and substantial relation to the object of the legislation."  Hendking, 781 F.2d at 851.  Thus, to establish an equal protection violation, Plaintiff must make two

showings.  First, Plaintiff must demonstrate that Defendants acted with the intent to discriminate against him.  McClesky v. Kemp, 481 U.S. 279, 292, 107 S.Ct. 1756, 1767, 95 L.Ed.2d 262 (1987); Mencer v. Hammonds, 134 F.3d 1066, 1070 (11th Cir. 1998).  Second, Plaintiff must establish he was among a group of similarly situated persons that unreasonably or arbitrarily suffered different treatment by Defendants.  *See* Nordlinger v. Hahn, 505 U.S. 1, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1 (1992); *see also* Hendking, 781 F.2d at 850.  Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient.  GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1367-68 (11th Cir. 1998); Coon v. Georgia Pacific Corp., 829 F.2d 1563, 1569 (11th Cir. 1987).

In the instant case, Plaintiff alleges no facts suggesting he was among a group of similarly situated persons, such as a group of inmates that practiced the Hebrew-Yisraelite religion or a group of African-American inmates, that suffered disparate treatment based upon membership in that group.  Similarly, Plaintiff has failed to allege that *other* members of any particular group were treated similarly; he alleges only that he was singled out for disparate treatment. These allegations do not state an equal protection claim.

### C.    Respondeat Superior

As a final matter, to the extent Plaintiff seeks to hold Defendants Crosby, Hamilton, Dickens, Shockley, Castle, Petrovsky, Haskin, Booker and Griffis liable on a respondeat superior theory of liability, those claims should be dismissed.  It is well established that supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.  *See* Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted).  Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.  *Id.* (citation omitted).  This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act

unlawfully and failed to stop them from doing so.'"  *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999), *cert. denied*, 120 S.Ct. 1974, 146 L.Ed.2d 804 (2000).

Isolated incidents are generally insufficient to establish a supervisor's liability, and filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied.  Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984).  Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights."  Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994).  The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur.  *See* Harris v. City of Marion, 79 F.3d 56, 58-59 (7th Cir. 1996).  Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary.  "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous."  Cottone, 326 F.3d at 1360 (internal quotation marks and citation omitted).

Plaintiff suggests there is a causal connection between these Defendants' actions and the alleged federal law violations based on the Defendants' failure to implement policies that require the recognition and accommodation of Plaintiff's religion.  Alternatively, he seeks to impose liability based upon their failure to overrule Chaplain Jones' denials of his grievances.  However, there must first be a finding of violative conduct before supervisory liability can be imposed.  Because there has been no unlawful conduct at any level, the supervisory officials or those that denied Plaintiff's grievances cannot be held liable.  Furthermore, Plaintiff has not alleged that any of these Defendants directed subordinates to act unlawfully or knew the subordinates would act unlawfully and failed to stop them from doing so.  Accordingly, Plaintiff has failed to establish a claim against these Defendants and his claims should be dismissed.

Plaintiff's claim against Defendant Gray should likewise be dismissed, as he has alleged no facts demonstrating Defendant Gray's participation in any of the alleged unconstitutional conduct.

Defendant Gray is named as a Defendant on pages one and two of Plaintiff's complaint, but does not appear elsewhere in the complaint.

      For the aforementioned reasons it is respectfully **RECOMMENDED**:

      1.      That this action be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

      2.      That Plaintiff's Motion for a Preliminary and Permanent Injunction (Doc. 45) be **DENIED as moot**.

      3.      That the clerk be directed to close the file.

      At Pensacola, Florida this 21st day of October 2005.

      /s/ *Elizabeth M. Timothy*
      **ELIZABETH M. TIMOTHY**
      **UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE TO THE PARTIES**</u>

      **Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**